UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| THERSIA J. KNAPIK, | \* |
| Plaintiff, | \* |
| V. | \*   No. 2113-CV- |
| MARY HITCHCOCK MEMORIAL HOSPITAL, | \*        175 |
| Defendant. | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF THERSIA J. KNAPIK, M.D.

Deposition taken at the law offices of Watts Law

Firm, P.C., 19 Central Street, Woodstock, Vermont,

on Tuesday, April 9, 2013, commencing at 9:05 a.m.

1  friends.

2      Q.  Did you discuss sending the letter to either
3  the licensing board or the University of Kentucky with
4  anybody before you sent it?  Anybody at all.  I don't
5  care where they were or what they were doing.

6      A.  My therapist.

7      Q.  Okay.  And who is that?

8      A.  Terry Baker.

9      Q.  And is that Terry female or male?

10     A.  Male -- female.  Sorry.

11     Q.  And what type of therapist is Terry Baker?

12     A.  She's a licensed clinical social worker.

13     Q.  What was the nature -- strike that.  Did you
14  understand or have an appreciation for the fact that
15  sending this letter could negatively impact Dr. Doe?

16     A.  My obligation was to report this letter,
17  according to the AMA.

18         MR. KAPLAN:  Could you read my question back.

19         (The pending question was read.)

20     A.  And I'm sorry, I guess I answered that in a
21 manner that you didn't understand.  I focused on this
22 was my American Medical Association ethical and moral
23 obligation, that it was required of me by this agency

Page 114

1  that polices physicians. I didn't think about
2  anything other than I was -- that this was -- I was
3  obligated to do this.
4      Q. BY MR. KAPLAN: So you gave no thought
5  whatsoever to what the impact might be to Dr. Doe in
6  sending this letter to these two locations? None
7  whatsoever?
8      A. I thought about my AMA obligation. What was
9  required of me to do.
10     Q. The question I asked you, ma'am, and again
11 I'll ask it, unless you tell me you can't answer it,
12 is whether or not you gave any consideration
13 whatsoever to the impact that sending these letters
14 might have on Dr. Doe?
15     A. I can't answer that. I don't recall what.
16 What I recall is being very focused on what my medical
17 and moral obligations were at the time.
18     Q. In order to make your decision about your
19 ethical and moral decisions at the time, did you have
20 to come to any conclusions yourself as to what you
21 were reading and what it meant? Did you have to
22 interpret it in any way?
23     A. Well, I don't think that --

1            MR. WATTS:  Objection.

2       Q.   Your answer is no, okay.  Thank you.  Next,

3   did you -- I think we already discussed the fact that

4   you didn't discuss with anybody at the Medical Center

5   your decision that you were ethically required to mail

6   that letter before you sent it, correct?

7            MR. WATTS:  Objection.

8       A.   Can you make the question shorter, please?

9       Q.   You did not discuss with anyone at the

10  Medical Center your belief that you had an ethical

11  responsibility to mail the letter?

12           MR. WATTS:  Objection.

13      A.   I didn't discuss the letter, period.

14      Q.   Okay.  Fine.  Did your therapist, Terry

15  Baker, tell you you had an ethical responsibility?

16           MR. WATTS:  Hold it.  Hold it.  We're not

17  going there.  That's privileged.

18           MR. KAPLAN:  It's --

19           MR. WATTS:  Not going there.

20           MR. KAPLAN:  Well, you can tell her not to

21  answer the question and somebody else will figure out

22  whether or not we're going there.

23           MR. WATTS:  I just did.

1    Q.  BY MR. KAPLAN:  All right.  Let me just ask
2 the question again so our record is clear.  You told
3 me that you discussed with your therapist your
4 decision to mail the letter.  Did I understand that to
5 be one of your answers correctly?
6           MR. WATTS:  Objection.  Hold it.  I don't
7 think that was her testimony, A, --
8           MR. KAPLAN:  Why don't you find the
9 testimony, Andy.
10          MR. WATTS:  And let me finish my objection,
11 please.  And furthermore, she's not going to discuss
12 anything she discussed with her therapist.
13          MR. KAPLAN:  Fine.  You want to find -- I'll
14 make my representation, the record will reflect.
15   Q.  BY MR. KAPLAN:  My recollection of your
16 testimony is you told me that the only human being
17 with whom you discussed mailing the letter, the
18 February 11, 2011 letter was with your therapist Terry
19 Baker.  Is that much true?
20          MR. WATTS:  Again, she's not going to answer
21 it.
22    Q.  Okay.  Then I assume, perhaps incorrectly,
23 but I'll ask it anyway, I would like to know what you

Page 149

1    discussed concerning the letter with -- with I guess
2    it's Ms. Baker or Mrs. Baker, I'm not sure.
3              MR. WATTS:  And you're not going to answer
4    that.  That's privileged information.
5         Q.  Okay.  Did your discussion with your
6    therapist assist you in your conclusion that you were
7    ethically obligated to mail the letter?
8              MR. WATTS:  Same objection and instruction.
9         Q.  Would the letter have been mailed without the
10   contribution, whatever it was, of your therapist?
11             MR. WATTS:  You can answer.
12        A.  I mailed the letter because it was my AMA-
13   sanctioned obligation to mail the letter.
14             MR. KAPLAN:  Would you read my question back,
15   please.
16             (The pending question was read.)
17             MR. WATTS:  And you're re-asking that?
18             MR. KAPLAN:  I asked him to read it back
19   because I don't think she answered it.
20             MR. WATTS:  Objection.
21             MR. KAPLAN:  Are you directing her not to
22   answer?
23             MR. WATTS:  I just objected.

1            MR. KAPLAN:  All right.

2       A.   There's a premise in that question that

3  doesn't allow me to honestly answer that question.

4  Can you please ask it in a different way without a

5  premise?

6       Q.   BY MR. KAPLAN:  I don't understand your

7  concern about a premise.

8       A.   Could you please ask the question in a

9  different manner?

10      Q.   Would the letter have been mailed by you

11  without a contribution by your therapist to your

12  decision?

13      A.   Yes.

14      Q.   You mailed the letter on -- let's take a look

15  here.

16           Let's mark this.

17           (Knapik Exhibit 15 was

18           marked for identification.)

19      Q.   BY MR. KAPLAN:  So you mailed the letter on

20  May 8, 2012.  That's the postmark that you actually

21  secured from Dartmouth.  Did you mail this from the

22  Dartmouth post office?

23      A.   From the Dartmouth post office?  No.