UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 DEC 12 PM 2:43

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| THERSIA J. KNAPIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:12-cv-175 |
| ) | |
| MARY HITCHCOCK MEMORIAL ) | |
| HOSPITAL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION AND ORDER RE:**
**PLAINTIFF'S MOTION FOR CONTEMPT AND SANCTIONS**
**(Doc. 126)**

This wrongful termination suit is before the court on plaintiff Thersia Knapik's motion for contempt and sanctions. (Doc. 126.) Following a hearing, this court ordered defendant Mary Hitchcock Memorial Hospital (MHMH) to produce certain documents for in camera review to determine whether they were privileged from disclosure. The court determines that the documents are protected from disclosure, and accordingly denies Knapik's motion.

For the background facts of this case, the reader is referred to Judge Reiss's order dated May 27, 2014. (Doc. 113.) In that ruling, Judge Reiss ordered MHMH to produce an amended privilege log clearly identifying the sources of all documents included within it, including "all responsive documents in Drs. Kispert, Finlayson, Rosenkranz, and Tanski's files for which a privilege is claimed." (*Id.* at 7-8.) She further ordered MHMH to produce all nonprivileged, relevant materials contained in Dr. Kispert's office/departmental files. (*Id.* at 21.)

On August 9, 2014, Knapik filed a motion for contempt and sanctions alleging that MHMH had failed to comply with Judge Reiss's order by withholding (1) certain emails contained in Dr. Kispert's files; (2) certain "feedback emails" from Dr. Doe to Dr. Finlayson; (3) emails between Dr. Doe and Knapik and Drs. Doe and Rosenkranz; and (4) documents related to Dr. Doe's harassment charge against Dr. Henriques. (Doc. 126 at 2-4.)

1

At the September 18, 2014 hearing on Knapik's motion, this court found that sanctions were not warranted under the circumstances and held that Knapik's motion would be treated as a motion to compel. MHMH was ordered to provide the allegedly privileged documents from Dr. Kispert's file, as well as privilege log documents 610, 611 and 614 (the "feedback emails"), to the court for in camera review to determine whether they were privileged. The remainder of Knapik's discovery request was denied. The court has reviewed the documents provided by MHMH and now addresses Knapik's motion as it relates to these documents.

As previously noted by Judge Reiss, New Hampshire law governs the availability of privilege in this diversity case. (Doc. 113 at 9). New Hampshire's quality assurance privilege provides in part:

> Records of a hospital committee organized to evaluate matters relating to the care and treatment of patients or to reduce morbidity and mortality and testimony by hospital trustees, medical staff, employees, or other committee attendees relating to activities of the quality assurance committee shall be confidential and privileged and shall be protected from direct or indirect means of discovery, subpoena, or admission into evidence in any judicial or administrative proceeding.

N.H. Rev. Stat. Ann. § 151:13-a. "[T]he quality assurance privilege was meant to advance the general public interest in promoting vigorous self-criticism, which leads to improvements in health care services." *Disabilities Rights Ctr., Inc. v. Comm'r, New Hampshire Dep't of Corr.*, 732 A.2d 1021, 1023 (1999). MHMH's internal Quality Management Plan provides that all clinical departments including graduate medical education are considered to be quality assurance committees, that peer review of residents is considered a quality assurance activity, and that all residency performance evaluations are considered to be privileged records related to the care and treatment of patients under § 151:13a. (Doc. 113 at 12-13.) At least one New Hampshire trial court has reviewed the Quality Management Plan and has agreed that resident evaluations are privileged documents. *Clement v. Dartmouth-Hitchcock Clinic*, 2006 WL 4937178 (N.H. Super. Ct. Dec. 20, 2006). Based on the Quality Management Plan and New Hampshire law, Judge Reiss determined that the quality assurance privilege extends to performance feedback and evaluations of a MHMH medical resident by peers and advisors, whether formal or informal, as well as the resident's responses to critical evaluations. (Doc. 113 at 12-13.) The court therefore has examined the documents at issue to see if they fall within this definition.

The first category of documents is from Dr. Kispert's files. The first three documents listed on the privilege log are a June 11, 2012 letter indicating that Dr. Doe successfully completed her residency; an April 23, 2012 letter verifying that Dr. Doe was never placed on probation or disciplined; and a March 13, 2012 letter stating that Dr. Doe was currently a general surgery resident in good standing. The next document is a November 21, 2011 performance evaluation of Dr. Doe signed by Dr. Doe and Dr. Kispert.

The next document is an email sent on January 14, 2012 from Dr. Kispert to Drs. Freeman and Rosenkranz in which Dr. Kispert criticizes Dr. Doe's performance. This is followed by three emails between Dr. Kispert and Dr. Rosenkranz regarding Dr. Doe's performance.

The January 14 email apparently was displayed inadvertently to a group of residents on February 8. Dr. Doe wrote an email regarding the incident to Drs. Freeman and Kispert the following day. Dr. Doe's email addresses the criticisms of her performance contained in the January 14 email. The next several documents listed on the privilege log are emails written from February 9 to 15 between Dr. Kispert and other doctors relating to the February 8 incident and to Dr. Doe's performance.

Next, there is a March 18, 2012 email from Dr. Kispert to "everyone who took the ABSITE" exam congratulating them on their performance. Finally, there is an April 24 email from Dr. Kispert to Dr. Doe regarding a meeting they had about her performance.

All of the letters and emails from Dr. Kispert's file are either informal evaluations by Dr. Kispert and others of Dr. Doe's performance, or Dr. Doe's responses to critical evaluations. Thus, MHMH properly asserted the quality assurance privilege with regard to these documents.

The second category of documents, the so-called "feedback emails" from Dr. Doe to Dr. Finlayson dating from early 2011, are likewise privileged. These emails contain summaries of conversations that Dr. Doe had with other doctors in her residency program regarding her performance. The information in the emails squarely falls within the category of informal feedback and evaluation of a medical resident and is therefore protected from disclosure.

3

Knapik argues specifically that the January 14, 2012 email from Dr. Kispert should be produced because Dr. Doe discussed the email with Drs. Prock and Rosenkranz, her family, and plaintiff, and thereby waived any privilege she might have had. This argument fails because the privilege is held by the hospital, not by its employee Dr. Doe. N.H. Rev. Stat. 151:13-a(III). There is no evidence that MHMH has waived its privilege with regard to the email.

Under New Hampshire law a party may overcome a privilege by showing that the sought-after records contain information that is material and relevant to the party's defense or claim, that the information is unavailable from another source, and that there is a compelling justification for its disclosure. *See In re State*, 27 A.3d 813, 818 (N.H. 2011); *Harper v. Healthsource NH, Inc.*, 674 A.2d 962, 967 (N.H. 1996). Knapik argues that there is no alternative source for the information in the January 14 email because Dr. Kispert and Drs. Rosenkranz and Freeman were employed by MHMH, and MHMH asserts the privilege for all of them.

The fact that MHMH asserts the privilege on behalf of the author and recipients of the email does not mean that the information it contains is unavailable to Knapik. Indeed, it appears that Knapik was able to effectively depose Dr. Kispert regarding the contents of the email. (Doc. 133-1.) Dr. Kispert's description of the email accurately reflects its contents. Regardless, even if the information contained in the email were unavailable from another source, Knapik has not shown a compelling justification for its disclosure or argued that such justification exists. The court therefore finds no reason to pierce the privilege with regard to the January 14 email.

As both the documents contained in Dr. Kispert's files and the "feedback emails" were privileged, and the privilege log accurately reflects the source and content of these documents, defendant did not violate the court's order by failing to disclose the documents. Plaintiff's motion for sanctions and contempt is therefore DENIED. (Doc. 126.)

Dated at Rutland, in the District of Vermont, this 12th day of December, 2014.

/s/ Geoffrey W. Crawford
Geoffrey W. Crawford, Judge
United States District Court