UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Thersia J. Knapik, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:12-cv-00175-gwc |
| | § | |
| Mary Hitchcock Memorial Hospital, | § | |
| Defendant. | § | |

## DEFENDANT MARY HITCHCOCK MEMORIAL HOSPITAL'S OBJECTION TO PLAINTIFF'S "MOTION TO ALTER OR AMEND JUDGMENT FILED PURSUANT TO RULE 59(e) OF THE FRCP" (WITH INCORPORATED MEMORANDUM OF LAW)

Defendant Mary Hitchcock Memorial Hospital (the "Hospital"), by and through its counsel, Sulloway & Hollis, P.L.L.C., objects to plaintiff Thersia J. Knapik's Rule 59(e) motion to "alter or amend" the judgment entered in favor of the Hospital on February 5, 2015, which motion effectively seeks reconsideration of the Court's February 3, 2015 "Opinion and Order Re: Defendant's Motion for Summary Judgment" (the "Summary Judgment Order").  Dr. Knapik's motion should be denied because it either improperly seeks to:  (a) relitigate issues already considered thoroughly and correctly ruled on by the Court; or (b) advance spurious new arguments that could and should have been presented to the Court prior to judgment.

1.     Standard of Review

Rule 59(e) serves the narrow purpose of allowing a court to correct manifest errors of law or fact.  *See Munafo v. Metropolitan Transportation Authority*, 381 F.3d 99, 105 (2d. 2004).  It is "an extraordinary remedy which should be used sparingly."  *Kirkpatrick v. Merit Behavioral Care Corp.*, 128 F.Supp.2d 186, 190 (D. Vt. 2000).  After all, "Court opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure."  *Macleod v.*

*Scott*, 2014 U.S. Dist. LEXIS 170782, *6 (M.D. Fla. December 10, 2014).  As such, a Rule 59(e)

motion "should not be granted where the moving party seeks to relitigate issues already

considered thoroughly by the court" because "mere disagreement with a prior order should be

resolved in the normal appellate process."  *Mansfield Heliflight, Inc. v. Heli-One Canada*, 2012

U.S. Dist. LEXIS 162048, **4-5 (D. Vt. November 13, 2012).  Moreover, Rule 59(e) is not "a

vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to

introduce new evidence or advance arguments that could and should have been presented to the

district court prior to the judgment."  *Harleysville Lake States Ins. Co. v. Granite Ridge Builders,*

*Inc.*, 2009 U.S. Dist. LEXIS 116817, *6 (N.D. Ind. December 14, 2009).  In other words,

"summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in

a lawsuit, when a party must show what evidence it has that would convince a trier of fact to

accept its version of the events."  *Id.*  In short, Rule 59(e) is not a mechanism for a losing party to

request a summary judgment "do-over."  *Id.  See Kirkpatrick*, 128 F.Supp.2d at 190 ("It is well-

settled that Rule 59 is not a vehicle for re-litigating old issues, presenting the case under new

theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'").

    2.    <u>Dr. Knapik's Motion</u>

        By its Summary Judgment Order, the Court correctly ruled that:  (a) dismissals of

medical residents for ethical concerns may constitute academic decisions; (b) the Hospital's

"decision to terminate Dr. Knapik for anonymously sending a private letter containing potentially

damaging information about another resident was an 'academic' decision as that term has been

used in the law because it involved a professional judgment about Dr. Knapik's ability to interact

honestly and forthrightly … with colleagues;" (c) an "academic decision may be set aside only if

it is arbitrary, capricious or unreasonable;" and (d) "no reasonable jury could find that [the

Hospital's] dismissal of Dr. Knapik was arbitrary, capricious, or unreasonable."  Summary Judgment Order at 11-13.  *See Scott v. Harris*, 550 U.S. 372, 380 ("where the record taken as a whole could not lead a rationale trier of fact to find for the nonmoving party, there is no genuine issue for trial").

As further explained by the Court, Hospital "officials made a professional judgment that a medical student who anonymously discloses confidential information about another resident that could potentially cause great damage to the other resident's career, then lies about having done so and ultimately expresses no remorse for her actions, cannot be trusted to work with colleagues in a productive manner in a profession that requires candor and honesty" and that this "falls well within the category of academic decisions because it represents an academic judgment by [Hospital] officials, expert in the subjective evaluation of medical doctors[,] that Dr. Knapik was lacking the attributes necessary to adequately perform her clinical duties as a surgery resident."  Summary Judgment Order at 16.

Although somewhat hard to discern, Dr. Knapik's motion seems to argue as follows:

a.     The Court incorrectly ruled that her dismissal was an academic decision.

b.     The deference afforded to academic decisions does not apply to breach of contract claims.

c.     The Hospital's academic decision is not entitled to any deference because she was not afforded the right to challenge the decision.

d.     The Hospital's academic decision was arbitrary, capricious and/or unreasonable.

e.      Dr. Knapik has asserted a viable breach of the implied covenant of good faith and fair dealing claim.

As will be discussed, these arguments either seek to relitigate issues already considered thoroughly and correctly ruled on by the Court or advance spurious new arguments that could and should have been presented to the Court prior to judgment.

3.     Academic Decisions

Dr. Knapik's assertion that the Court incorrectly ruled that her dismissal was an academic decision is merely a repeat of the same arguments she made in response to the Hospital's motion for summary judgment – *i.e.*, that because the Hospital wrote that her was dismissal was for "non-academic reasons" it could not have been an academic dismissal.  Plaintiff's Rule 59(e) Motion at 8, 13.  This argument already was correctly rejected by the Court.  As stated by the Court, in "those letters, the term 'academic' is clearly being used in a more specific way to refer to matters of patient care and exam scores, as opposed to concerns about professionalism or ethics" and that "for purposes of judicial review, however, 'academic' decisions encompass ethics and professionalism because they are an essential part of a resident's training."  Summary Judgment Order at 12.

Indeed, as explained in the residency program's policies and procedures manual (the "PPM"), residents must demonstrate competency in six areas, including interpersonal skills and professionalism.  PPM [Doc. 138-1] at 3-4.  Professionalism is defined to include integrity, respect for others, commitment to ethical principles, and accountability to the profession.  *Id.* *See also* PPM [Doc. 138-1] at 48 (a resident may be dismissed from the program "due to academic deficiency, non-academic deficiency or behavior incompatible with the role of the physician"); Resident Agreement of Appointment [Doc. 138-3] (indicating that the PPM is "an integral part of this agreement" and that the Hospital could terminate Dr. Knapik's appointment "at any time upon any reasonable basis which shall be deemed to include failure to satisfy the academic requirements of the program; failure to progress in knowledge or performance at a satisfactory rate; failure to attain or demonstrate competence in any of the core competencies; or conduct unbecoming a physician").

As such, the Hospital's determination that Dr. Knapik's actions were unbecoming of a physician and contrary to the residency program's ethical standards (and, therefore, that she should not receive certification for successful completion of the program) is as much an academic decision as a determination regarding her clinical skills.  In any event, because this issue was already considered thoroughly by the Court, Dr. Knapik's mere disagreement with the Court's order is not a proper basis for relief under Rule 59(e).

    4.       Contract Claims

In its summary judgment motion, the Hospital asserted that its dismissal determination is entitled to *substantial* deference regardless of whether her claims are based in contract or tort and that summary judgment must be granted in its favor because Dr. Knapik could not demonstrate that its determination was "arbitrary, capricious or unreasonable" – *i.e.*, "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."

In response to its summary judgment motion, Dr. Knapik did not dispute that academic decisions may be set aside only if arbitrary, capricious or unreasonable.  *See* Summary Judgment Order at 12 (the "parties agree that a genuinely academic decision may be set aside only if it is arbitrary, capricious or unreasonable").  Instead, she asserted only that the "arbitrary, capricious or unreasonable" standard did not apply because she was dismissed from the residency program for "disciplinary" rather than "academic" reasons.  Plaintiff's Summary Judgment Opposition [Doc. 143] at 15.  At oral argument, she even seemed to back away from this argument:

> The Court:    All right.  But you agree with the addition of these other words, unreasonable and so forth, that what you are after is a jury trial in which the jury would determine whether the [dismissal] action met that, fell below that arbitrary and capricious and unreasonable standard.

Mr. Watts:      That's correct….

Transcript of January 7, 2015 Motion for Summary Judgment Hearing at 38-39.  *See Guse v. University of South Dakota*, 2011 U.S. Dist. LEXIS 34621, **34-35 (D.S.D. March 30, 2011) ("for a court to overturn a student's dismissal on substantive grounds it must find that such dismissal was arbitrary and capricious" and this "narrow" standard "applies to both academic and disciplinary dismissals").  *See also Bricker v. Sceva Speare Memorial Hospital*, 281 A.2d 589 (N.H. 1971) (denial of hospital privileges reviewed by New Hampshire courts under arbitrary and capricious standard notwithstanding that the hospital's decision was based on the physician's unprofessional interactions with staff rather than his clinical competency).

More importantly for purposes of the present motion, Dr. Knapik never argued that the "arbitrary, capricious or unreasonable" standard did not apply to her contract claims.  As such, she should not be permitted to make such argument at this juncture.  *See Landrau-Romero v. Banco Popular De P.R.*, 212 F.3d 607, 612 (1st Cir. 2000) (arguments not raised in opposition to a party's motion for summary judgment are deemed waived).

In any event, the substantial deference afforded to the Hospital concerning Dr. Knapik's dismissal is not diminished because her claim may be based in contract.  *See Al-Dabagh v. Case Western Reserve University*, 777 F.3d 355 (6th Cir. 2015) (medical student's claim that medical school breached contractual duty of good faith and fair dealing when it "refused to certify him for graduation and dismissed [him] from the university" for lack of professionalism fails because a "dismissal on professionalism grounds amounts to a deference-receiving academic judgment" and his dismissal fell "within the realm of reason"); *Abdullah v. State of North Dakota d/b/a University of North Dakota*, 771 N.W.2d 246, 255 (N.D. 2009) (affirming summary judgment in favor of medical school on medical resident's breach of residency contract claim because the

district court correctly "applied deference to the substantive decision to dismiss Abdullah, concluding the dismissal was an academic decision based on professionalism, and decided a reasonable person could find Abdullah engaged in unprofessional conduct during the residency program"); *Gupta v. New Britain General Hospital*, 687 A.2d 111, 121 (Conn. 1996) (affirming summary judgment in favor of hospital on medical resident's breach of residency agreement claim because he did not "provide an evidentiary foundation to demonstrate the existence of material facts" on the issue of whether his "dismissal resulted from arbitrary, capricious, or bad faith conduct on the part of the hospital" – i.e., "that the hospital's decision had no discernable rational basis"); *Alden v. Georgetown University*, 734 A.2d 1103, 1111 (affirming grant of summary judgment in favor of medical school on former student's breach of contract claim concerning his dismissal from the medical school because its judgment as to whether he met academic standards is a determination that "calls for judicial deference" and "there was sufficient evidence in the record from which a fact-finder could conclude that there was a rational basis for Georgetown's decision to dismiss" the medical student").[1]

This is particularly true in the present case because Dr. Knapik's contract provides that the Hospital could terminate her appointment "at any time upon any reasonable basis" including "failure to attain or demonstrate competence in any of the core competencies [which includes professionalism]; or conduct unbecoming a physician."  Doc. 138-3 at 27.  *See* Plaintiff's Rule

---

[1]Contrary to Dr. Knapik's assertion, the plaintiff in *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775 (2d. Cir. 1991), did not "press[] a claim for breach of contract."  Plaintiff's Rule 59(e) Motion at 4, 13.  The only claim asserted by the plaintiff in *Ezekwo* was one brought under 42 U.S.C. § 1983, regarding the public hospital's "decision to go from a rotational system for selecting a Chief Resident to a 'merit based' process."  *Id.* at 778-79.  The court of appeals held that, in accordance with the Due Process Clause, "some minimal steps should have been taken to inform the parties who stood to be adversely affected by [the] change in the method of selection and to provide them with some opportunity to demonstrate either that their past performance satisfied the new criteria or that the criteria should not be applied to them."  *Id.* at 785.

59(e) Motion at 2 ("Dr. Knapik and [the Hospital] entered into a contract that … provided [the Hospital] with substantial discretion regarding the substantive grounds it could cite to justify a discharge").  At best, all this means is that Dr. Knapik could not be arbitrarily, capriciously or unreasonably dismissed from the residency program, which is the standard that was applied correctly by the Court.

5.    Contractual Due Process

Putting aside that Dr. Knapik's "tenure in the [residency] program" was governed by successive one-year contracts each of which included express provisions for the termination of her appointment,[2] there is no claim (or even an allegation) in her Amended Complaint that the Hospital breached any express or implied contractual provision regarding due process.  Rather, her "breach of implied contract" claim merely alleges that certain unspecified "residency and personnel policies" provide that her "tenure in the program" would be "secure so long as [she] maintain[s] acceptable academic and clinical progress and does not violate ethical standards." Amended Verified Complaint, ¶¶ 64-65.  According to Dr. Knapik, these "policies establish an implied contract of employment to the effect that [the Hospital] may not dismiss [her] absent 'just cause.'" Amended Verified Complaint, ¶ 69.  Dr. Knapik maintains that "[a]s there was no just cause for defendant's actions in dismissing plaintiff from the [residency] program, defendant breached the implied contract of employment between the parties."  Amended Verified Complaint, ¶ 79.  As such, she may not now claim that the Hospital breached any express or implied contractual provision regarding due process.

_____

[2]*See Connors v. Mary Hitchcock Memorial Hospital et al.*, Case No. 2-10-cv-94 (July 11, 2013 Opinion and Order) [Doc. 135] at 28 (dismissing claim that medical resident's dismissal from a residency program lacked just cause because her contract "included provisions for the parties not to offer or seek renewal of the contract").

Even if she had made such a claim, it cannot be disputed that Dr. Knapik was provided with information about the grievance process (including her right to an evidentiary hearing) and told what she should do if she wanted to "pursue the grievance option."  Doc. 138-3 at 30.  Dr. Knapik knowingly and intentionally decided to not to "pursue the grievance option" after consulting with her legal counsel.  As Dr. Knapik testified:

> Q:   Now, did you receive then [*i.e.*, on June 13, 2012] a copy of the GME grievance process and procedures?
> A:   Yes, I did.
> Q:   And it says, "Should you choose to pursue the grievance option described in these attachments, you must notify Dr. Bertrand in the office of Graduate Medical Education within five days of receipt of this letter?
> A:   Correct.
> Q:   And you understood that at the time?
> A:   Correct.
> Q:   And you chose not to contact Dr. Bertrand?
> A:   Yes.

Deposition of Thersia J. Knapik, M.D. ("Knapik Dep.") at 50.

As such, the grant of summary judgment entered in the Hospital's favor should not be amended or altered because Dr. Knapik now maintains that she was denied contractual due process.  *Zafar v. Roger Williams General Hospital*, 1994 U.S. App. LEXIS 573, **11-12 (1st Cir. 1994) (contractual due process satisfied where resident knew he had due process rights under the contract to contest the hospital's determination, but "never invoked the due process mechanism mentioned in the contract").

The mere fact that the residency program director communicated with Dr. Knapik's fellowship program before the time for her to pursue a grievance expired does not change this result.  Among other reasons, it was Dr. Knapik who first notified her fellowship program about her dismissal from the residency program.  As Dr. Knapik testified:

> Q:   … when did you first hear from the fellowship in Miami concerning the issue involving your reporting to Kentucky?

A:    When I called them.

Q:    And what caused you to call them?

A:    I felt they had an obligation [sic] to know what was happening up at Dartmouth.

Q:    When you called – so you called your fellowship program, and to whom did you speak?

A:    Dr. Seth Thaller.

\* \* \* \* \*

Q:    And do you recall when that occurred?

A:    June – it was the day I got terminated.

Q:    That would have been probably on June 13?

A:    (Nods head affirmatively.)

Q:    Is the answer yes?

A:    Correct, yes.

Q:    Are you aware whether or not your [fellowship] program had been advised at that point in time about the situation by anyone from Dartmouth?

A:    No.  Dr. Thaller was – he made it very clear – that this was the first time that he was hearing from it – about it.

Knapik Dep. at 240-41.

It was only *after* Dr. Knapik already had notified him of her dismissal that Dr. Thaller spoke with Dr. Kispert and requested a letter from the residency program confirming the same. MHMH 796-97.  In short, it was Dr. Knapik's disclosure that compelled the Hospital to discuss the matter with her fellowship program before the time for her to administratively challenge her dismissal had expired.  Moreover, the fellowship program knew that Dr. Knapik could contest her dismissal because she sent it a copy of the June 13, 2012 letter concerning her dismissal, which letter advised Dr. Knapik of her grievance rights.  P258-59 (June 18, 2012 overnight letter from Dr. Knapik's legal counsel to her fellowship program, enclosing "DHMC's letter (6/13/12) dismissing Dr. Knapik").  Even though Dr. Knapik never asked her fellowship program to hold off on any decision pending the resolution of any grievance, the fellowship program did not rescind its offer to Dr. Knapik until the time for her to pursue a grievance concerning her dismissal had expired without her taking any such action.  P275 (June 21, 2012 letter from

fellowship program to Dr. Knapik).  Even then, the fellowship program told her that she could

re-apply if circumstances changed.  *Id.*; Knapik Dep. at 242.

      Moreover, as noted, Dr. Knapik simply had "no intention of pursuing a grievance."

Knapik Dep. at 53.  Her decision had *nothing to do* with Dr. Kispert's letter to her fellowship

program (even assuming she was aware of the letter during the administrative appeal period) or

any other communication regarding her dismissal.  Rather, it was based on some convoluted

argument that the residency program's allowing Dr. Doe to "graduate" gave her "no reason to

believe … that Dartmouth-Hitchcock would make a moral and ethical decision" regarding any

such grievance.  Knapik Dep. at 52-53.[3]  As Dr. Knapik testified:

> Q:    And it was on that basis that you decided not to use whatever internal
>       procedures might have been available to challenge your termination?
> A:    Yes.
> Q:    Were you familiar with the process that you decided not to apply?  In
>       other words, each of the steps.
> A:    Each of the grievance steps?
> Q:    Yes, ma'am.
> A:    Why would I familiarize myself with the process that I had no intention of
>       using?
> Q:    Can't answer that question, but I'll take that answer to be no, you weren't
>       familiar; is that correct?
> A:    I had no intention of using the grievance process.

Knapik Dep. at 52-53.

      Accordingly, the Hospital cannot be faulted for Dr. Knapik's failure to pursue a

grievance.  Moreover, Dr. Knapik cites no authority for the nonsensical proposition that the

Hospital's academic decision became something other than an academic decision or that such

---

[3]In the July 14, 2014 affidavit from her therapist that Dr. Knapik submitted to the Court,
Ms. Baker states:  "Dr. Knapik told me that she was made aware of a grievance process she
could use, but was told that she could not have legal representation as part of that process.  Dr.
Knapik reasoned that without counsel this would not be in her best interest."  Doc. 143-6 at ¶ 20.
Again, nothing about any letter to her fellowship program or the like as being the reason she did
not file a grievance.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

decision is not entitled to deference merely because her fellowship program was informed of her dismissal or it was otherwise announced before the time for her to file a grievance had expired. This is apart from the fact that she never made this argument in response to the Hospital's motion for summary judgment and may not do so for the first time via a Rule 59(e) motion.

6.    <u>Arbitrary, Capricious And/Or Unreasonable</u>

As noted, the Court determined that "no reasonable jury could find that [the Hospital's] dismissal of Dr. Knapik was arbitrary, capricious, or unreasonable." Summary Judgment Order at 13. While the Hospital maintains that it need not have done so, in making this determination, the Court assumed that "Dr. Knapik is credible, that Dr. Doe gave her the letter voluntarily, and that the hospital was mistaken in its belief that Dr. Knapik had hacked into Dr. Doe's email account."[4] Summary Judgment Order at 13. As the Court states, the "manner in which Dr. Knapik obtained the letter was not the basis for her dismissal." *Id.* Rather, the reason for her dismissal was her sending of the confidential letter to Dr. Doe's fellowship program. *Id.*

Although in her objection to the Hospital's motion for summary judgment Dr. Knapik did not even attempt to argue that the Hospital arbitrarily, capriciously or unreasonably dismissed her from the residency program, the Court carefully considered all of the evidence submitted by the parties in making its determination. Dr. Knapik's mere disagreement with the Court's order

---

[4]In other words, in this context, this issue is not whether there is any contradictory evidence in the record, but whether there is sufficient evidence in the record "from which the fact-finder could find that there was a rational basis for [the Hospital's] decision to dismiss" Dr. Knapik. *Alden*, 734 A.2d at 1111. *See Al-Dabagh*, 777 F.3d 355 (dismissal must fall "within the realm of reason;" it "was neither arbitrary nor capricious for the Committee to credit other accounts [of events that formed the basis of the decision to dismiss him from a medical school] above [the plaintiff's]"); *Abdullah*, 771 N.W.2d at 255 (a "reasonable person could find [medical resident] engaged in unprofessional conduct during the residency program"); *Gupta*, 687 A.2d at 121 (medical resident failed to demonstrate "that the hospital's decision had no discernable rational basis").

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

"should be resolved in the normal appellate process," not by way of a Rule 59(e) motion.[5]

*Mansfield Heliflight, Inc.*, 2012 U.S. Dist. LEXIS 162048 at **4-5.

      7.   <u>Good Faith And Fair Dealing</u>

      In its motion for summary judgment, the Hospital stated that "although not a model of clarity, by Count Three, Dr. Knapik seemingly also claims that [the Hospital] breached an implied covenant of good faith and fair dealing by dismissing her from the residency program." *See* Amended Complaint, ¶ 95 ("Defendant's actions prevented plaintiff from graduating and acquiring a certificate to advance into the fellowship program where she had been accepted").[6] In response, Dr. Knapik never really addressed her breach of implied covenant of good faith and fair dealing claim, and certainly never explained "how an implied covenant of good faith and fair dealing provides greater protections than that afforded" to her under the arbitrary and capricious standard. *See Gupta*, 687 A.2d 122. *See also Monahan v. GMAC Mortgage Corp.*, 179 Vt. 167,

---

[5]Dr. Knapik asserts that the American Board of Surgery ("ABS") "declared [her] board eligible." *See* Doc. 143-9 at ¶ 18; Plaintiff's Rule 59(e) Motion at 8-9. Apart from the fact that there is nothing before the Court concerning why the ABS may have made such determination and what information it had before it, the mere fact that the ABS may have reached a different conclusion regarding Dr. Knapik's actions does not render the Hospital's determination arbitrary, capricious or unreasonable. *See Petition of Crane*, 132 N.H. 293, 299, 564 A.2d 499, 452 (1990) ("Simply put, even if we would have come to a different conclusion from that of the [decision-maker], we cannot revise the … decision if it could reasonably have decided as it did").

[6]The Hospital also noted that:

> Dr. Knapik seemingly also complains about her being informed of MHMH's "decision to fire [her] by appearing at [her] residence virtually minutes before the graduation ceremonies." Amended Complaint, ¶ 84. Apart from being factually incorrect (she was merely told not to attend the chief's dinner), this allegation would not support a standalone claim (if one is even being asserted) for breach of the implied covenant of good faith and fair dealing under the facts of this case.

Defendant's Memorandum [Doc. 137-1] at 13. Dr. Knapik did not address this issue in her summary judgment pleadings and does not raise it in her Rule 59(e) motion.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

187 n.5 (2005) ("we will not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when the plaintiff also pleads a breach of contract *based upon the same conduct*") (emphasis in original).

Undeterred, Dr. Knapik attempts to make new arguments supporting her claim that the Hospital breached an implied covenant of good faith and fair dealing by:  (a) failing "to conduct a thorough and fair investigation of the charges of theft [of the letter] and ill motives leveled against her by Dr. Doe;" (b) believing "the allegations of Dr. Doe" concerning the same notwithstanding her "documented history of lying on matters related to patient care;"[7] (c) disclosing the "internal disciplinary actions" taken against her to her fellowship program and the ABS; and (d) dismissing Dr. Knapik for "embarrassing" the Hospital or in "capitulation to Dr. Doe," rather than for the reasons stated in her dismissal letter.  Plaintiff's Rule 59(e) Motion at 6.

Again, these allegations are not made in Dr. Knapik's Amended Complaint or in connection with her summary judgment pleadings.  As such, she may not make them for the first time in a Rule 59(e) motion.  This is apart from the fact that these allegations all concern actions related to her dismissal from the residency program, which is the subject of her breach of contract claim.

In any event, Dr. Knapik has "failed to offer any independent evidentiary foundation to substantiate" her assertion that "the hospital acted pursuant to some sinister motive" in:  (a) assessing how Dr. Knapik obtained the letter or why she sent it; (b) conveying its reasons for her dismissal from the residency program; and (c) reporting her dismissal to other academic institutions or certifying bodies affected by the same.  *Gupta*, 687 A.2d at 122-23.  In this regard, while Dr. Knapik may be "entitled to all inferences which are fairly supported by the evidence,"

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

---

[7]This allegation is somewhat ironic given that Dr. Knapik "lied" about sending the letter to Dr. Doe's fellowship program.  Summary Judgment Order at 16.

she may not "build [her] case on mere opprobrious epithets of malice or the gossamer threads of whimsy, speculation and conjecture." *Macone v. Town of Wakefield*, 277 F.3d 1 (1st Cir. 2002). As such, the Court should not "credit purely conclusory allegations, indulge in rank speculation, or draw improbable inferences." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).  Yet, that is all Dr. Knapik offers concerning the Hospital's alleged bad faith (*e.g.*, the Hospital did not really dismiss Dr. Knapik for the reasons set forth in its letter to her, but rather did so to mollify Dr. Doe because an e-mail about her inadvertently had been displayed to other residents in early 2012).

      8.    <u>Conclusion</u>

Dr. Knapik's Rule 59(e) motion should be denied because it either improperly seeks to: (a) relitigate issues already considered thoroughly and correctly ruled on by the Court; or (b) advance spurious new arguments that could and should have been presented to the Court prior to judgment.

      Respectfully submitted,

      MARY HITCHCOCK MEMORIAL HOSPITAL

      By Its Attorneys,
      SULLOWAY & HOLLIS, P.L.L.C.

DATED:  March 23, 2015      By:   /s/ William D. Pandolph, Esq.
          Edward M. Kaplan, Esq.
          William D. Pandolph, Esq.
          9 Capitol Street
          Concord, NH 03301
          (603)224-2341
          e-mail:  wpandolph@sulloway.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED:  March 23, 2015                    By:___/s/ William D. Pandolph, Esq._____

                                                         William D. Pandolph, Esq.

Law Offices of

Sulloway & Hollis, P.L.L.C.

Concord, N.H. 03301

{C1286623.2 }