UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT


\* \* \* \* \* \* \* \* \* \* \* \* \*

THERSIA J. KNAPIK,                        \*

                        Plaintiff,    \*

    V.                                    \*   No. 2113-CV-

MARY HITCHCOCK MEMORIAL HOSPITAL,    \*         175


                        Defendant.    \*


\* \* \* \* \* \* \* \* \* \* \* \* \*




DEPOSITION OF THERSIA J. KNAPIK, M.D.


Deposition taken at the law offices of Watts Law

Firm, P.C., 19 Central Street, Woodstock, Vermont,

on Tuesday, April 9, 2013, commencing at 9:05 a.m.

1   that?

2       A.  I believe so.  Well, I believe it was -- I

3   wasn't handed it but it was -- it was put on the table

4   for me to pick up.

5       Q.  Okay.  The last paragraph, or next to last

6   paragraph of the letter says, "Included with this

7   notice of termination is a copy of our GME grievance

8   process and procedures."

9       A.  Mm-hmm.  Correct.

10      Q.  Now, did you receive then a copy of the GME

11  grievance process and procedures?

12      A.  Yes, I did.

13      Q.  And it says, "Should you choose to pursue the

14  grievance option described in these attachments, you

15  must notify Dr. Bertrand in the office of Graduate

16  Medical Education within five days of receipt of this

17  letter."

18      A.  Correct.

19      Q.  And you understood that at the time?

20      A.  Correct.

21      Q.  And you chose not to contact Dr. Bertrand?

22      A.  Yes.

23      Q.  And your explanation, as I understand it, or

1   you said that you had information that led you to

2   distrust Dartmouth-Hitchcock to be willing to make an

3   ethical and moral decision.

4       A.  I had no reason to believe, given the

5   information that I had, that Dartmouth-Hitchcock would

6   make a moral and ethical decision.

7       Q.  And --

8       A.  Regarding my termination.

9       Q.  And was it on that basis that you decided not

10  to use whatever internal procedures might have been

11  available to challenge your termination?

12      A.  Yes.

13      Q.  Were you familiar with the process that you

14  decided not to apply?  In other words, each of the

15  steps.

16      A.  Each of the grievance steps?

17      Q.  Yes, ma'am.

18      A.  Why would I familiarize myself with the

19  process that I had no intention of using?

20      Q.  Can't answer that question, but I'll take

21  that answer to be no, you weren't familiar; is that

22  correct?

23      A.  I had no intention of using the grievance

Page 53

1    process.

2         Q.  For example, are you aware at the end of the

3    due process or fair hearing procedures, are you aware

4    what the last step is?

5         A.  No.

6         Q.  Tell me what the information was that you had

7    that led you to believe you wouldn't be treated in an

8    ethical and moral way.

9         A.  At relatively the same time as when Katie

10   Davis told me that she was falsifying her medical

11   license application, Dr. Kispert had made an entirely

12   different -- Dr. Kispert had sent an e-mail to Dr.

13   Freeman asserting that he felt Katie was inadequately

14   trained as a surgical resident and that

15   Dartmouth-Hitchcock should not graduate her.  I was

16   then told by Dr. Rosenkranz that there was a

17   subsequent meeting between Freeman, Dr. Kispert and

18   Dr. Rosenkranz to discuss Dr. Kispert's assertion, and

19   that Dr. Freeman stated in this meeting, as told to me

20   by Dr. Rosenkranz, that we will not not graduate this

21   resident because to do so at this time makes us look

22   incompetent as a training program.

23             MR. KAPLAN:  Okay.  I'm going to move to

1    Hampshire Board of Medicine.

2        A.   Right.

3        Q.   What medical licensure do you hold now, if

4    any?

5        A.   The New Hampshire Board of Medicine granted

6    me a full medical license.

7            MR. WATTS:  Thank you.  That's all I have.

8                    FURTHER EXAMINATION

9    BY MR. KAPLAN:

10       Q.   I just -- one thing that I wanted to ask

11   about.  The -- when did you first hear from the

12   fellowship in Miami concerning the issue involving

13   your reporting to Kentucky?

14       A.   When I called them.

15       Q.   And what caused you to call them?

16       A.   I felt they had an obligation to know what

17   was happening up at Dartmouth.

18       Q.   When you called -- so you called your

19   fellowship program, and to whom did you speak?

20       A.   Dr. Seth Thaller.

21       Q.   Allard?

22       A.   Thaller.

23       Q.   Could you spell it?

1     A.  T-h-a-l-l-e-r.

2     Q.  And do you recall when that occurred?

3     A.  June -- it was the day I got terminated.

4     Q.  That would have been probably on June 13?

5     A.  (Nods head affirmatively.)

6     Q.  Is the answer yes?

7     A.  Correct, yes.

8     Q.  Are you aware whether or not your program had

9  been advised at that point in time about the situation

10  by anyone from Dartmouth?

11     A.  No.  Dr. Thaller was -- he made it very clear

12  that this was the first that he was hearing from it --

13  about it.

14     Q.  Okay.  Did you have any -- presumably you had

15  some subsequent conversations or contact with the

16  Miami fellowship program?

17     A.  Only through writing.

18     Q.  No more contact, no more conversations at all

19  that you can recall?

20     A.  I recall sending an e-mail to the department

21  secretary that I never got a response to, and it was

22  something about paperwork or something.

23     Q.  Okay.

1      A.  So it wasn't anything I needed to really

2    follow up on.

3      Q.  So how did you learn that the Miami

4    fellowship program was terminating your acceptance?

5      A.  I believe it was the letter from -- Dr.

6    Parrish sent me a letter.

7      Q.  Okay.  Do you remember what it said?

8      A.  We are rescinding your fellowship is all I

9    remember reading.

10     Q.  Do you remember --

11     A.  And I could reapply.

12     Q.  Was there a reason why they were rescinding

13   your fellowship that they expressed in the letter?

14     A.  I believe it was -- I mean, the fellowship is

15   contingent on being board eligible and successfully

16   have completed a general surgery residence, which --

17     Q.  That may be what the fellowship is dependent

18   upon, but my question to you was did they report to

19   you in a letter?

20     A.  Do we have the letter?

21     Q.  I don't.  If I did, I would show it to you.

22     A.  I don't recall specifically recall what the

23   letter said.

CORRECTION AND SIGNATURE PAGE
TO DEPOSITION

DEPOSITION OF:

DATE OF DEPOSITION:

RE:

I,
In order to make this deposition more nearly conform to the testimony
given, wish to make the following changes:

| PAGE | LINE | NOW READS | SHOULD READ |
|------|------|-----------|-------------|
| 2-3  | 22   | MSMLE     | USMLE       |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |
|      |      |           |             |

Dated this 12 day of June, 2013.

_____
Deponent

ORIGINAL

1                    CERTIFICATE OF WITNESS

2

3          I, Thersia J. Knapik, M.D., have read the

4    foregoing transcript of deposition taken on Tuesday,

5    April 9, 2013, at the offices of Watts Law Firm, P.C.,

6    Woodstock, Vermont, and do hereby swear/affirm it is

7    an accurate and complete record of my testimony given

8    under oath in the matter of Knapik V. MHMH, including

9    any and all corrections that may appear on those pages

10   so denoted as "Corrections."

11

12

13                   Thersia J. Knapik, M.D.

14   STATE OF North Carolina

15   COUNTY OF Wake

16

17          Subscribed and sworn to before me this 10

18   day of June , 20 13 .

19

20

21   _____ Notary Public _____ J.P. _____

MARK BABYAK
Notary Public, North Carolina
Wake County
My Commission Expires
March 27, 2017

22          My Commission Expires: March 27, 2017

23