UNITED STATES DISTRICT COURT

for the

DISTRICT OF VERMONT

| | |
|---|---|
| THERSIA J. KNAPIK | \| |
| | \| |
| PLAINTIFF | \|   CASE NO. 5:12-cv-175 |
| | \| |
| v. | \| |
| | \| |
| MARY HITCHCOCK MEMORIAL HOSPITAL | \| |
| | \| |
| DEFENDANT | \| |

**REPLY MEMORANDUM IN SUPPORT OF
DR. KNAPIK'S MOTION TO ALTER
OR AMEND JUDGMENT FILED
PURSUANT TO RULE 59(e) OF THE FRCP**

Norman E. Watts, Esq.
Anthony Z. Roisman, Esq.
Watts Law Firm PC
PO Box 270
Woodstock, VT 05091
(802) 457-1020
wattslawfirmpc@gmail.com

**ARGUMENT**

MHMH's Objection to Dr. Knapik's Rule 59(e) understandably, and rather successfully, tries to muddy the waters about what truly is at issue in this case, in this motion, and at this summary judgment stage of the proceedings. In MHMH's telling, all the Court needs to know is: (1) MHMH is an academic institution; (2) deference is due every academic institution when it decides to discharge a medical resident/employee on ostensibly academic grounds; (3) deference was warranted here because Dr. Knapik breached her academic/ethical duties under the contract MHMH had drafted and she had signed; and (4) summary judgment is due because no jury could rationally believe MHMH's decision to discharge her was arbitrary, capricious, or unreasonable.

In reality, the arguments MHMH presses do not address the issues now before the Court. Dr. Knapik consistently has asserted MHMH did much more than violate her <u>substantive contractual right</u> not to be discharged arbitrarily and without just cause. Dr. Knapik also claimed MHMH violated <u>three other rights</u>: (1) her <u>express contractual right to procedural due process</u>, i.e., assurance that MHMH could not terminate her unless and until it followed very specific procedures in its contract with her, procedures which assured her the right to challenge a recommended termination <u>before</u> action was taken against her, including the right to know the bases for the recommendation and the evidence alleged to support that recommendation; (2) the <u>implied covenant of good faith and fair dealing</u>, i.e., MHMH's obligation to make a fair, non-prefunctory investigation of the charges against her; and (3) the <u>right not to be wrongfully terminated</u>, i.e., the right New Hampshire tort law applies to employment relationships, to ensure employers may not terminate employees for reasons that violate public policy.

MHMH argued, and the Court agreed, that Dr. Knapick's contractual rights are mere

1

procedural technicalities, that violation of these rights is inconsequential, and that the only issue is MHMH's plenary "academic" discretion and MHMH's alleged "academic judgment," Doc 150 at 16. MHMH—and the Court—are wrong: these contractual rights are not of secondary importance and violations of these rights are not mere technicalities.[1] MHMH is barred from exercising its *substantive* discretion unless, and until, it complies with its *procedural* obligations to Dr. Knapik. This Court found MHMH breached Dr. Knapik's contractual right to a fair hearing. Id. at 9. It failed to address her separate claim for breach of the covenant of good faith and fair dealing. Yet it summarily dismissed both procedural contract claims. The Amended Complaint sought damages based on those contract breaches. Doc. 9 ¶¶89, 90, 99, 100.

MHMH also ignores Dr. Knapik's argument that facts the Court assumed were beyond dispute, actually were contested by Dr. Knapik's admissible evidence, evidence the Court did not address. That evidence supports Dr. Knapik's substantive contract claim because MHMH's decision was not academic or the alleged academic deficiencies were unsupported by the record on which MHMH relied, or both. There also is evidence supporting Dr. Knapik's wrongful termination tort claim that shows MHMH violated public policy by terminating Dr. Knapik because MHMH was embarrassed by Dr. Knapik's actions, or afraid of Dr. Doe, or both.

Rather than join issue with Dr. Knapik on the merits of her Motion, MHMH seeks succor in a page of boilerplate objections to Rule 59(e) motions (e.g., that the movant is merely

---

[1] In voiding the conviction of a man who confessed to armed bank robbery but who had not been promptly presented for arraignment, in violation of Fed.R.Crim.P. 5(a), the Supreme Court held such rules are not mere "administrative nice[ties]" and courts must not regard their violation as inconsequential technicalities. To the contrary, "'[t]he history of liberty has largely been the history of observance of procedural safeguards.'" *Corley v. United States*, 556 U.S. 303, 320, 321 (2009)(quoting *McNabb v. United States*, 318 U.S. 332, 447 (1943)(per Frankfurter, J.)).

rehashing arguments she lost or raising new arguments she failed to raise before), as if simply erecting these boilerplate barriers made them relevant and true. They are not. In fact, as shown below, MHMH ignores both key arguments Dr. Knapik raised in opposing summary judgment and key evidence she previously referenced in support of those preserved arguments.

## I. Dr. Knapik is not Raising "New" Arguments or Citing "New" Facts

Dr. Knapik's Motion contends the Court ignores the legal implications of its holding that MHMH failed to comply with its procedural duties under its contract with Dr. Knapik, specifically that MHMH could terminate her only if it followed the procedures specified in the PPM it drafted, which included the rights to be heard and present evidence at a hearing <u>before</u> any final decision to discharge, even for "academic" reasons. MHMH argues Dr. Knapik did not make these points, *in haec verba*, in her Complaint and "[a]s such, she may not now claim that [MHMH] breached any express or implied provision regarding due process." Doc. 157 at 8.

Yet, Dr. Knapik argued these points in opposing summary judgment ("Doc. 143"),[2] and in her Statement of Disputed Material Facts for Trial ("SDMF")(Doc. 143-1).[3] MHMH's claim

---

[2] See, e.g., Doc. 143 at 2 ("In dismissing Dr. Knapik without any warning and without any opportunity for a fair hearing before her termination became effective, MHMH violated its contractual due process requirements"), id. at 3 (alleged a "Breach of implied employment contract for lack of 'just cause' and other transgressions of the contract relationship.") and Doc. 143 at 14 citing *O'Keefe v. Keene Senior Ctr., Inc*., 2009 N.H. Super. LEXIS 150, *4-10, 14-16 (N.H. Super. 2009) in asserting New Hampshire recognizes discharged employees may sue in contract and tort (wrongful termination), and these disparate claims implicate different standards.

[3] Dr. Knapik's SDMF was an integral part of her Opposition. Doc. 143 at 20, n.7 ("Dr. Knapik includes a more detailed accounting of the summarized facts in her separate [SDMF], ¶¶146-255"). The SDMF identified the procedural contractual claim: "The PPM promised Dr. Knapik a 'Fair Hearing and Due Process' before MHMH could dismiss her"; "MHMH did not provide Dr. Knapik with 'written notice' before it dismissed her. MHMH did not provide Dr. Knapik with a hearing before it dismissed her. Defendant dismissed Dr. Knapik …. The decision was final at that point. Defendant violated the PPM by offering her a hearing after the final

3

that these arguments are new, is baseless.

Similarly, MHMH's contention that Dr. Knapik is limited to the facts she alleged in the complaint confuses the standards applicable to a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment. Hence, parties opposing summary judgment may—and indeed must—"cit[e] to particular parts of materials in the record, including depositions, documents, … affidavits or declarations, … admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). See *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)(non-movant "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)(non-movant is not limited to a complaint's "'mere allegations,'" but may "'set forth' ... 'specific facts,' which for purposes of the summary judgment motion will be taken to be true.") (Citations omitted)).

## II. MHMH'S BREACH OF CONTRACTUAL DUE PROCESS VOIDS DR. KNAPIK'S DISCHARGE

MHMH seeks to avoid the obvious consequences of this Court's determination that MHMH violated its contract with Dr. Knapik by arguing that all Dr. Knapik is claiming is that MHMH violated the contract by wrongfully terminating her and thus that the standard for wrongful termination for alleged "academic" reasons, should be applied to the breach of contract claim. But, as Dr. Knapik made clear in opposing summary judgment, New Hampshire law allows her to sue for both breach of contract and the tort of wrongful termination. Doc. 143 at 13 (citing *Porter v. City of Manchester*, 849 A.2d 103 (N.H. 2004)). This Court acknowledged *Porter* but erred in holding that because MHMH's decision to terminate Dr. Knapik "was an

---

dismissal. No appeal was available." Doc. 143-1 ¶¶161-2 (cites omitted) and ¶ 170. MHMH's investigation was shoddy, unfair and its reasons pretextual. Doc. 143-1¶¶154, 163, 247-53.

academic decision, rather than an employment decision, ... [it] is therefore governed by a different standard." Doc. 150 at n.2. That might be true if Dr. Knapik had asserted nothing but a substantive contract claim that MHMH's decision to discharge her was mistaken, but as Dr. Knapik made clear, and as this Court agreed, MHMH breached her procedural contract rights by not following the procedures the PPM specified for deciding whether and how to terminate her.[4]

Dr. Knapik's summary judgment opposition and her instant motion stress that the only lawful way to discharge Dr. Knapik, including for "academic" reasons, was to follow the PPM procedures. This Court agreed, holding "MHMH failed to follow" those contractually mandated procedures. Doc. 150 at 9. MHMH now attempts to challenge that holding both by rearguing points this Court rejected—a rejection which is binding on MHMH since it did not file its own Rule 59(e) motion—by impermissibly seeking to add a new argument, i.e., that because Dr. Knapik promptly informed her fellowship program of MHMH's irrevocable discharge of her that Dr. Knapik's disclosure "forced" MHMH to contact her fellowship program. Doc. 157 at 9-10.[5]

Notably, MHMH's Objection never disputes the basic proposition that if it failed to follow its own procedures for discharging Dr. Knapik, then the discharge was void *ab initio*.[6]

---

[4] MHMH has argued Dr. Knapik could not sue because she did not exhaust her contractual remedies, but now seeks to avoid the consequences of its own failure to comply with the contract. Like the exhaustion claim, Dr. Knapik's claim is based on the consequences that flow from a breach of the contract's procedural rights, not the validity of the decision reached.

[5] Dr. Kispert's letter to Dr. Thaller does not mention Dr. Knapik's call, recommended termination or appeal rights. Doc. 143-1 ¶168. Dr. Kispert states Dr. Knapik's action "resulted in her dismissal from the ... Residen[cy] program effective June 13, 2012" and that "I will not be certifying her to be eligible to sit for the General Surgery Boards." Doc. 143-7 at MHMH 456 (emphasis added). It is both what Dr. Kispert said, and when he said it, that is damning.

[6] MHMH devotes pp. 9-12 of its Objection to attacking the Court's conclusion that MHMH violated its contractual obligation to Dr. Knapik. But, as the Court found: (1) MHMH did not "recommend" that Dr. Knapik be discharged; (2) it did not provide her with the alleged bases for

5

Until and unless MHMH implements a contractually valid discharge process it is not entitled to any deference because there is no valid "decision," academic or otherwise. Doc. 143-1 ¶¶170-71 Moreover, <u>how</u> MHMH determined <u>whether</u> to terminate Dr. Knapik and <u>how</u> it <u>implemented</u> that determination are not "academic" decisions or governed by "academic" considerations. Those were decisions controlled by the express or implied terms of the PPM, a contract MHMH drafted and a contract MHMH consistently has asserted is binding. Hence, the cases MHMH relies upon, in which the breach of contract claim was solely based on the correctness of the discharge (not the procedures the institution must follow for a discharge), are inapposite because they do not implicate procedural contract rights. Doc. 157 at 6-7.[7]

In sum, MHMH's decision to terminate Dr. Knapik was without legal authority because it was made without compliance with the explicit contractual obligations MHMH imposed on the contracting parties, itself included, through the PPM it drafted.

### III. <u>MHMH Breached the Covenant of Good Faith and Fair Dealing</u>

MHMH's Summary Judgment Reply ignored Dr. Knapik's arguments on her good faith and fair dealing claim and MHMH's Objection ignores them again. While Dr. Knapik's breach of contract claim rests on MHMH's failure to follow its own, i.e., the PPM's, procedures in deciding <u>whether</u> to terminate Dr. Knapik, her breach of good faith claim mainly concerns <u>how</u>

---

discharging her until it had done so; (3) it told Dr. Thaller she had been discharged and would not be certified for the surgical boards (Doc. 150 at 9); and Dr. Kispert told colleagues he would tell Dr. Knapik her discharge was "irrevocable." Doc. 143-1 ¶155 & Doc. 143-7 at MHMH 3043.

[7] MHMH is correct that *Ezekwo v. NYC Health & Hosp. Corp.*, 940 F.2d 775 (2d. Cir. 1991) did not involve a breach of contract claim. That is a distinction without a difference. In *Ezekwo*, the Court voided a hospital's "academic" decision for failure to provide Constitutional procedural Due Process. MHMH breached contractual due process. Thus, as in *Ezekwo*, even if the decision were "academic", the decision is void for failure to provide required due process.

MHMH conducted its investigation that led to its decision to discharge her. But MHMH offers virtually no defense of its shoddy investigation. For example, MHMH does not contest the fact that Dr. Kispert substantially based his decision on his assumption that Dr. Knapik had no reason (or a malevolent reason) for sending the Finlayson letter, but he never inquired or determined her actual reasons. MHMH does not contest it knew and amply documented Dr. Doe's penchant for lying but nonetheless accepted her allegations without an investigation of their truth.

MHMH's only defense against Dr. Knapik's contention that the reasons it provided in its discharge letter to Dr. Knapik were pretextual is to cite to cases that conclude <u>unsupported</u> claims of improper reasons for termination will be rejected. But MHMH does not contest Dr. Knapik's considerable evidence that MHMH's real motivations for discharging her—and the only plausible explanations for its precipitous action and its failure to provide Dr. Knapik with her contractually guaranteed procedural rights prior to discharge—were (1) anger at her for besmirching MHMH's reputation by disclosing that it had failed to reveal that a resident it had highly recommended for a fellowship, Dr. Doe, had well-documented academic/clinical problems, and (2) MHMH's fear of Dr. Doe's rage if it did not promptly discipline Dr. Knapik severely. These alternative theories were not "speculation" but are based on Dr. Freeman's and Dr. Cronenwett's testimony regarding their feelings after Kentucky authorities contacted MHMH and Dr. Doe's and Dr. Kispert's testimony about Dr. Doe's wrath after she learned that Dr. Kispert and Dr. Knapik had laid bare her numerous academic shortcomings.

This record of evidence—which supports Dr. Knapik's contentions that MHMH's investigation of her was shoddy and that MHMH's stated reasons for her discharge were pretextual (a claim independent of her claim that MHMH breached the express terms of its

7

contract promising due process)—is in stark contrast to the lack of any independent evidence in the cases cited by MHMH.[8] MHMH relies on *Gupta v. New Britain Gen'l Hosp.,* 687 A.2d 111, 121 (Conn,1996), and *Monahan v. GMAC Mortgage Corp.*, 179 Vt. 167, 187 n.5 (2005) for the notion that New Hampshire does not recognize a separate cause of action for breach of good faith and fair dealing. But *Gupta* and *Monahan* are facially inapposite to the facts of this case. In those cases, the claim that defendants breached their duty of good faith and fair dealing was based on the same facts as the plaintiffs' wrongful discharge or breach of contract claims. In this case, as noted above, Dr. Knapik bases each separate claim on substantially different facts.

**IV. THERE IS SUBSTANTIAL EVIDENCE MHMH'S DECISION WAS SUBSTANTIVELY WRONG**

Dr. Knapik contends the Court ignored substantial and probative evidence that undermined the Court's conclusions regarding her tort claim for wrongful termination and her substantive contract claim for an unjustified dismissal. MHMH notes, correctly, that Dr. Knapik is reasserting arguments she made in opposing summary judgment. Dr. Knapik has reason and warrant to do so, however, because the Court ignored her undisputed evidence on three key points, evidence that established genuine factual disputes on material issues, which must be resolved by a jury (rather than by summary judgment).[10]

---

[8] *See Gupta v. New Britain Gen'l Hosp.,* 687 A.2d 111, 121 (Conn. 1996)(plaintiff's sole evidence was his own affidavit); *Macone v. Town of Wakefield*, 277 F.3d 1, 6-7 (1st Cir. 2002)(no evidence supporting racial discrimination claim); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)(no evidence supporting age discrimination).

[10] Genuine disputes exist regarding three critical issues: **(1) Was Dr. Knapik actually discharged for "academic" reasons?** The Court stressed, "[c]ourts have consistently held that the dismissal of a resident for poor clinical performance is an academic decision" (Doc. 150 at 11 (citations omitted, emphasis added). But the Court ignored: **(a)** MHMH's letter to Dr Thaller that she was discharged for non-academic *and* non-clinical reasons; **(b)** MHMH's asserted reasons for discharging Dr. Knapik do not fit PPM criteria for "academic" discharges; **(c)** all the

8

Dr. Knapik need not prove, at the summary judgment stage, that she is clearly right (and MHMH surely wrong) on these issues. Rather, she need only demonstrate, as she did in her Opposition to Summary Judgment, that credible evidence exists that MHMH breached her <u>substantive</u> contractual right, and also violated her tort right not to be "wrongfully terminated." If, as Dr. Knapik's evidence demonstrates, she was not terminated for academic reasons, then her substantive claim under her contract is not judged by the arbitrary and capricious standard. If, as MHMH argues, she was terminated for academic reasons, Dr. Knapik has provided substantial evidence that MHMH acted arbitrarily, capriciously, or unreasonably by, *inter alia*, asserting she violated provisions of the PPM that are not contained in that document and by offering pretextual reasons for discharging her. This is particularly so because "'all justifiable inferences are to be drawn in h[er] favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (U.S. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

---

cases regarding "academic" discharges directly implicated patient care (unlike Dr. Knapik's actions); **(d)** cases Dr. Knapik cited holding an institution is bound by its stated reasons for discharge; **(e)** the Court's view that everything related to "professionalism" is automatically "academic" leaves no room for the well-defined difference between academic and disciplinary discharges (See *Bd. of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 87 (1978)("'Misconduct is a very different matter from failure to attain a standard of excellence in studies.'" (citation omitted)); and **(f)** two months before MHMH discharged Dr. Knapik, Dr. Kispert described her as "honest and reliable;" said "[h]er technical skills are quite good;" and said "she works in a collegial and professional manner." Doc. 143-1 ¶192 & Doc. 143-3 at P429.
   **2) Did Dr. Knapik's conduct violate PPM "academic" criteria?** Dr. Knapik presented evidence that the violations cited by the Court either were not identified in the discharge letter (alleged lying and not using internal procedures) or concerned matters which the PPM did not prohibit, e.g., sending the letter anonymously (which the AMA authorizes), failure to show remorse, and to act forthrightly with colleagues. See generally Doc. 152 at 11-12.
   **3) Whether Dr. Finlayson's letter regarding Dr. Doe was "a probation letter?"** The Court concluded it was not, heeding statements made by MHMH doctors after this suit was filed, but ignoring the evidence that under PPM criteria the Finlayson letter was probation and that Dr. Doe told at least two doctors that she was on probation.

9

## **CONCLUSION**

MHMH's Objection to Dr. Knapik's Motion boils down to a single chain of assertions: that the "academic" nature of its decision to discharge Dr. Knapik absolutely immunizes it from any challenge, including: (1) a challenge based on Dr. Knapik's claim—and this Court's holding—that it violated her procedural rights under the contract MHMH drafted; (2) a challenge based on Dr. Knapik's claim—which this Court never addressed—that MHMH violated the covenant of good faith and fair dealing New Hampshire law infers in every contract, and a covenant that required MHMH to conduct a fair and thorough investigation of the charges against Dr. Knapik; and (3) a challenge based on Dr. Knapik's contention that academic institutions defending against tort claims for wrongful termination based in New Hampshire are not entitled to the "deference" due in §1983 claims under *Horowitz* and its progeny.

Dr. Knapik urges this Court to reexamine, as the Court did in *Kirkpatrick v. Merit Behav. Care Corp.*, 128 F.Supp.2d 186 (D. Vt. 2000), "matters properly encompassed within the court's decision on the merits," *White v. N.H. DES*, 455 U.S. 445, 451 (1982), and to "correct clear error[s]" or "prevent manifest injustice." *Munafo v. MTA,* 381 F.3d 99, 105 (2d Cir. 2004).

Dated: 4/6/2015 .                           Respectfully submitted,

/s/Norman E. Watts
Norman E. Watts, Esq.
Anthony Z. Roisman, Esq.
Watts Law Firm PC
PO Box 270
Woodstock, VT 05091
(802) 457-1020