UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

|  |  |
|---|---|
| THERSIA J. KNAPIK,          ) | |
| )  | |
| Plaintiff,                      ) | |
| )  | |
| v.                               ) | Case No. 5:12-cv-175 |
| )  | |
| MARY HITCHCOCK MEMORIAL ) | |
| HOSPITAL,                    ) | |
| )  | |
| Defendant.                   ) | |

**OPINION AND ORDER RE:**
**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**
**(Doc. 152)**

Plaintiff Thersia Knapik seeks to alter or amend the court's February 3, 2015 order granting summary judgment on all of her claims to defendant Mary Hitchcock Memorial Hospital (MHMH) pursuant to Federal Rule of Civil Procedure 59(e). (Doc. 152.) Dr. Knapik argues that summary judgment was improperly granted to MHMH on her contractual claims because MHMH violated the due process requirements set forth in her employment agreement when it dismissed her from its residency program without adequate notice and an opportunity to be heard. She further argues that the court improperly resolved factual disputes which should have been left for a jury to decide.

The factual background of this case is set forth in the court's February 3 order. Relevant to this motion is the grievance procedure set forth in the MHMH Policies and Procedures Manual, which provides that a medical resident who is being dismissed shall be informed in writing of the recommendation for his or her dismissal and shall have five days to request a hearing. (Doc. 150 at 5.) In its motion for summary judgment, MHMH argued that because Dr. Knapik did not request a grievance hearing, her suit should be dismissed for failure to exhaust administrative remedies. Noting that the exhaustion requirement would ordinarily apply to the dismissal of a physician by a hospital, the court excused compliance with the requirement in this case because Dr. Knapik had shown that resort to the grievance process would likely have been

1

futile. (Doc. 150 at 9.) The court therefore declined to grant summary judgment to MHMH on that basis. Instead, the court held that Dr. Knapik's claims failed because her dismissal was an "academic" decision by an educational institution and such decisions are entitled to substantial deference. (*Id*. at 11-12.) Because no reasonable jury could conclude that Dr. Knapik's dismissal was arbitrary, capricious or unreasonable, the court granted summary judgment to MHMH. (*Id*. at 13.)

Dr. Knapik's Rule 59(e) motion essentially asks the court to reconsider its decision and come to a different conclusion. The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion to reconsider should not be granted to relitigate an issue already decided. *Id*. "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted).

Dr. Knapik does not present the court with any change of controlling law or new evidence. Rather, she contends that "[o]nce the Court concluded MHMH had breached its contract with Dr. Knapik by failing to provide her with the critical procedural rights guaranteed under her contract," it should have held that her claims for breach of contract and breach of the implied covenant of good faith and fair dealing were viable. (Doc. 156 at 7.) This argument fails for several reasons.

First, Dr. Knapik's complaint gives no notice that these claims were premised on MHMH's alleged violation of her contractual due process rights. Her breach of contract claim alleges that MHMH violated her implied contract of employment by dismissing her without "just cause." (Doc. 9 ¶ 77.) Her claim that MHMH breached the implied covenant of good faith is based on the following alleged actions by MHMH officials: confronting and humiliating Dr. Knapik in front of her guests, permitting Dr. Doe to graduate despite Dr. Doe's allegedly unethical conduct, giving false and inconsistent rationales for Dr. Knapik's dismissal, and

2

preventing Dr. Knapik from graduating and pursuing her fellowship. (*Id.* ¶¶ 84-98.) Nowhere in her complaint does Dr. Knapik allege that MHMH denied her contractual due process rights.

Not until her opposition to MHMH's motion for summary judgment did Dr. Knapik assert that MHMH "violated its contractual due process requirements" by dismissing her without adequate notice and an opportunity to be heard. (Doc. 143 at 2.) It is well-settled that a party may not forestall summary judgment by relying on a brand-new, previously unpleaded theory. *See, e.g., Travelers Cas. and Sur. Co. v. Dormitory Auth.-State of N.Y.*, 735 F. Supp. 2d 42, 82 (S.D.N.Y. 2010) (holding that counterclaimant could not resist summary judgment by relying on new breach of contract theory not pleaded in counterclaim or brought as affirmative defense). Dr. Knapik did not attempt to amend her pleadings to include this claim. Because MHMH had no notice of the claim, it was improper for Dr. Knapik to raise it for the first time on summary judgment, and the court was not required to consider it. *Id.*; *see also Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (explaining that district court need not consider claims raised for first time in opposition to summary judgment); *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Even if Dr. Knapik had given proper notice of her claim that MHMH denied her "critical procedural rights," the claim would fail on its merits because the record plainly shows that Dr. Knapik never attempted to assert those rights. (Doc. 156 at 7.) The grievance process set forth in the MHMH Policies and Procedures Manual is voluntary; a resident subject to disciplinary measures does not automatically receive a hearing prior to dismissal, but must request one. (Doc. 138-1 at 50.) Dr. Knapik deliberately decided not to pursue the grievance process. She admitted in her deposition that she received a copy of the grievance procedures along with the June 13 dismissal letter and understood that she could request a hearing within five days. However, she chose not to do so: "I had no intention of using the grievance process." (Doc. 157-1 at 3-4.) She testified that she opted not to use the grievance process because she had no confidence that MHMH "would make a moral and ethical decision" after it allowed Dr. Doe to graduate despite what Dr. Knapik saw as Dr. Doe's unethical behavior. (Doc. 157-1 at 3-4). Dr. Knapik cannot assert that MHMH breached the contract by denying her contractual due process rights where the grievance process was voluntary and she never invoked her rights under that

3

process. *See Zafar v. Roger Williams Gen. Hosp.*, No. 93-1390, 16 F.3d 401, 1994 WL 9857 (Table) at *4 (1st Cir. Jan. 13, 1994) (affirming district court's verdict for defendant hospital on resident's claim that hospital breached contract by denying him contractual due process rights where evidence showed that resident never invoked those rights).

Dr. Knapik also claims that the court erred in applying the standard set forth in *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78 (1978), and certain cases from other circuits. These decisions hold that dismissal of a medical student or resident for ethical concerns may constitute an academic decision entitled to substantial deference. Dr. Knapik objects that none of these cases involved a claim that the hospital failed to comply with its own contractual due process obligations prior to dismissing the plaintiff. This argument is of no avail to Dr. Knapik because—as the court has explained—she failed to properly bring such a claim herself, and such a claim would be unsuccessful even if she had asserted it. Moreover, there is ample support in the case law for applying deference to academic decisions even where the employment relationship is governed by a contract. *See Al-Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355, 359 (6th Cir. 2015); *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1109 (D.C. Cir. 1999); *Amadasu v. Bronx Lebanon Hosp. Ctr., Inc.*, 782 N.Y.S. 2d 82, 83 (N.Y. App. Div. 2004); *Abdullah v. State*, 771 N.W.2d 246, 255 (N.D. 2009).

Dr. Knapik next argues that the court improperly resolved factual disputes over whether her dismissal was truly an "academic" decision. This argument is a barely-disguised attempt to relitigate an issue previously decided. In its February 3 order, the court considered and rejected Dr. Knapik's argument that her termination was for non-academic reasons.[1] (Doc. 150 at 12.) Contrary to Dr. Knapik's assertion, this decision did not involve improper fact-finding by the court. There was no genuine dispute that MHMH dismissed Dr. Knapik for anonymously sending copies of a confidential letter addressed to Dr. Doe to Dr. Doe's Kentucky fellowship

---

[1] Dr. Knapik argues that the court overlooked her assertion that the American Board of Surgery "rejected MHMH's position and declared me board eligible even though MHMH failed to grant me a graduation certificate." (Docs. 156 at 9; 143-1 ¶ 255.) This assertion is unsupported by documentary evidence. It is also of no relevance to the question of whether MHMH's decision to terminate Dr. Knapik was an "academic" decision as that term is used by the courts. The undisputed evidence is that MHMH dismissed her for unprofessional behavior, a decision which fell within the category of academic decisions to which courts show deference. Dr. Knapik's exam scores and surgical abilities have never been at issue in this case.

4

program and medical board. (*Id.* at 14.) Dr. Knapik's contract of employment allowed MHMH to terminate "upon any reasonable basis," including "failure to attain or demonstrate competence in any of the core competencies; or conduct unbecoming a physician." (Doc. 138-3 at 27.) MHMH stated in its June 13 letter that Dr. Knapik was being dismissed for "behavior incompatible with the role of a physician," namely, forwarding a confidential document to another resident's future employer in violation of hospital policies and the core competency of professionalism. (Doc. 138-2 at 1.) MHMH's stated reason was supported by substantial record evidence described in the February 3 order, including an email sent from the chair of surgery to Dr. Knapik prior to her dismissal and the subsequent testimony of several MHMH officials. (Doc. 150 at 14-16.) The undisputed evidence supports the court's ruling that MHMH's decision fell within the category of "academic" decisions to which courts must afford substantial deference. (Doc. 150 at 12.) *See Al-Dabagh*, 777 F.3d at 360 (emphasizing that "academic" decisions "may permissibly extend beyond raw grades and other objective criteria" to include, *inter alia*, dismissals for unprofessional behavior (quotation and alteration omitted)).

Dr. Knapik claims that MHMH's proffered reason for her dismissal was pretextual, and that MHMH officials instead "were motivated by a desire to punish her and retaliate against her for the trouble she caused MHMH" and "to appease Dr. Doe who was furious about the letter being sent to Kentucky." (Doc. 156 at 13.) She claims that her theory is supported by the testimony of MHMH officials who stated that they were concerned that Dr. Knapik's actions would reflect negatively upon the institution. This evidence is not significantly probative of a malicious intent on MHMH's part, and fails to create a genuine issue of material fact regarding whether MHMH's decision was arbitrary and capricious. It is unsurprising that Dr. Knapik's supervising physicians at MHMH expressed embarrassment and anger at their depositions when discussing their reactions to the news that one of their residents had sent an anonymous damaging letter about another resident to that resident's future employer. Dr. Knapik's conduct did not reflect any better on the hospital where she trained than it did on her. But the same would be true of any misconduct by a resident. The subjective feelings of anger and embarrassment experienced by the individuals who supervised Dr. Knapik do not supplant the indisputable record that MHMH disciplined her because what she did violated the norms of that institution. Whether particular individuals in positions of authority felt anger, embarrassment on behalf of MHMH, personal disappointment or some combination is irrelevant to whether the

disciplinary decision was academic in nature and not arbitrary or capricious. *See Fenje v. Feld*, 398 F.3d 620, 628 (7th Cir. 2005) (rejecting claim that real reason for resident's termination was personal animosity held by program director after director discovered resident's duplicity; record showed that resident lied about his background during application process and dismissal was legitimate academic decision reached by director after consultation with peers).

Moreover, the existence of some evidence which—taken in the light most favorable to Dr. Knapik—could possibly suggest that MHMH had other motivations for dismissing Dr. Knapik does not preclude summary judgment. Academic decisions, such as the decision to dismiss a resident physician for unprofessional behavior, will be upheld unless they are arbitrary, capricious or unreasonable. *See Al-Dabagh*, 777 F.3d at 359; *Bricker v. Sceva Speare Mem. Hosp.*, 281 A.2d 589, 592 (N.H. 1971). Under an arbitrary and capricious standard of review, if the decision at issue is within the institution's authority, reasoned, and supported by substantial evidence—meaning evidence sufficient to support a conclusion—it will be upheld. *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). "Sufficiency, of course, does not disappear merely by reason of contradictory evidence." *Id.* As the court explained at length in its February 3 order, MHMH's decision to dismiss Dr. Knapik was authorized by the contract and its reasons were supported by substantial uncontroverted evidence. (Doc. 150 at 13-16.)

As Dr. Knapik has not pointed to any controlling decisions or evidence that the court overlooked, or demonstrated that there has been a clear error of law or manifest injustice, her Rule 59(e) motion must be DENIED. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004); *Shrader*, 70 F.3d at 257.

Dated at Rutland, in the District of Vermont, this 6th day of April, 2015.

Geoffrey W. Crawford, Judge
United States District Court

6